## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Case No:**

RALPH CUAN,

      Plaintiff,

v.

FLORIDA TRANSPORTATION
SYSTEMS, INC., a Florida
Profit Corporation, DOUG REVELLE,
an individual, CHRIS RUSTMAN,
an individual,

      Defendants.

_____/

## COMPLAINT

Plaintiff, RALPH CUAN ("Plaintiff"), by and through his undersigned counsel, hereby sues Defendants, FLORIDA TRANSPORTATION SYSTEMS, INC. ("FTS"), DOUG REVELLE ("Revelle"), and CHRIS RUSTMAN ("Rustman") (collectively, the "Defendants"), and alleges as follows:

## JURISDICTION, VENUE, AND PARTIES

1.    This is an action alleging claims against Defendant for unlawful employment practices, including race discrimination, national origin discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Civil Rights Act"), 42 U.S.C. § 1981, and the Florida Civil Rights Act ("the FRCA").

2.    This Court has jurisdiction over this action under 28 U.S.C. § § 1331 and 1343(a)(3). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3.    Venue is proper in this judicial district under 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. § 1391(b) because it is where a substantial part of the events or omissions giving rise to the cause of action herein occurred.

4.    At all times material hereto, Plaintiff was and is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

5.    At all times material hereto, Defendant, FTS, is a foreign for-profit corporation, incorporated in Missouri and doing business in the State of Florida, with its principal place of business in Hillsborough County, Florida.

6.    At all times material hereto, Defendant, DOUG REVELLE, was and is a resident of Hillsborough County, Florida, and the Vice President of FTS, and is otherwise *sui juris*.

7.    At all times material hereto, Defendant, CHRIS RUSTMAN, was and is a resident of Hillsborough County, Florida, and the President of FTS, and is otherwise *sui juris*.

8.    At all times material hereto, FTS has operated in the State of Florida, with offices in Tampa, Florida and Pompano Beach, Florida.

9.    At all times material hereto, FTS has employed 15 or more employees.

10.    Plaintiff was employed by FTS at its offices in Pompano Beach, Florida, and the unlawful employment practices alleged herein were committed at said Pompano Beach location, within the jurisdiction of the United States District Court for the Southern District of Florida.

11.    Defendant is a "person" within 42 U.S.C. §2000e(a), and an "employer" within the meaning of 42 U.S.C. §2000e(b).

12.    On or about June 19, 2020, Plaintiff filed a Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations, claiming discrimination based on race, national origin, and

retaliation. The Charge was assigned number 510-2020-04472. *See* Charge of Discrimination filed herewith as **Exhibit A**.

13.  On or about August 12, 2022, after more than twenty-four months had passed from the initial filing of his Charge of Discrimination, Plaintiff requested a Notice of Right to Sue from the EEOC.

14.  On August 12, 2022, the EEOC issued a Notice of Right to Sue to Plaintiff, providing Plaintiff with ninety (90) days to file a lawsuit under federal law. *See* Notice of Right to Sue filed herewith as **Exhibit B**. Therefore, this Complaint is timely, and Plaintiff has complied with all conditions precedent to filing this action.

## <u>GENERAL ALLEGATIONS</u>

15.  FTS is a for-profit transportation company that operates as a bus dealer and purveyor of of bus maintenance and technician services.

16.  Plaintiff is a Cuban-born citizen of the United States, who is a member of an ethnic Hispanic (Cuban) minority.

17.  Plaintiff was employed by FTS from March 30, 2015, until November 5, 2019, when FTS unlawfully terminated his employment.

18.  Plaintiff was first hired by FTS as a service technician in March 2015.

19.  In or about August 2017, Plaintiff was promoted to Service Manager at FTS's Pompano Beach location.

20.  Thereafter, Plaintiff became a target and victim of pervasive and incessant discrimination and harassment based on his race and national origin, as well as unlawful retaliation based on his complaints about same, resulting in multiple demotions and ultimately, the termination of his employment by FTS.

21.  As a Service Manager, Plaintiff was responsible for the managing of technicians, assigning tasks to technicians, and managing the Pompano Beach shop at FTS. Plaintiff also played a role in interviewing and hiring technicians, subject to the approval of FTS company executives.

22.  In the year that followed his promotion to Service Manager, Plaintiff became the target of discrimination and harassment by David Burns ("Burns") and Lenworth Forbes ("Forbes") – Caucasian employees at FTS – as well as by the President of FTS, Chris Rustman ("Rustman").

23.  In May of 2018, Plaintiff hired Misdel Molina ("Molina"), a Hispanic employee, to work at the Pompano location of FTS. The decision to hire Molina was approved by Vice President of FTS, Doug Revelle ("Revelle").

24.  Almost immediately after Molina was hired, Burns began to repeatedly complain about the fact that a Hispanic employee was hired, sending a complaint to Revelle and Rustman, questioning why FTS was hiring Hispanic employees "who barely speak English."

25.  Molina was subsequently terminated by Rustman.

26.  On the same week that Burns issued his racially motivated complaint about Molina, Plaintiff received a call from Rustman, wherein Rustman asked whether Plaintiff had been harassing Burns, which Plaintiff vehemently – and truthfully – denied.

27.  Rustman called Burns and Plaintiff into an office and read them the FTS company harassment policy.

28.  Plaintiff was confounded by the situation as he had not harassed Burns in any way, and hence, Plaintiff asked Burns to specify how Plaintiff had harassed him.

29.  Shockingly, and in the presence of Rustman, Burns replied and admitted that Plaintiff had not harassed him. Rather, he claimed that he was "harassed" because he had not been promoted at FTS like Plaintiff.

4

30. It was evident from Burns' comments that Burns was upset at the fact that a Cuban Hispanic was promoted, while he, a white American employee, was not.

31. Thereafter, Burns' evident resentment towards Cuban and Hispanic employees continued, which included Burns sending of discriminatory emails regarding the hiring of another Hispanic employee.

32. However, Burns was never reprimanded by any higher-ups at FTS, including Rustman and/or Revelle.

33. By contrast, when Burns, a white employee, complained of harassment, Plaintiff was summoned and required to defend himself against baseless allegations.

34. Nevertheless, the racial discrimination and harassment continued against Plaintiff.

35. In October 2018, a few months after hiring Molina, Plaintiff hired Oscar Cardenas ("Cardenas"), a Cuban-born Hispanic employee. Revelle approved the decision to hire Cardenas.

36. However, as with Molina, Burns complained about the hiring of yet another Cuban Hispanic employee "who did not speak English."

37. FTS again took no action against Burns regarding the discriminatory, racially motivated complaint, and continued to ignore Burns' racist statements and actions, while a hostile work environment continued to exist and progressively worsen.

38. Two weeks after Burns complained about Plaintiff hiring Cardenas, Burns took it upon himself to post a derogatory sign in the FTS Pompano Beach location that read "Caution: hearing protection required for the Cubans."

39. The implication of this sign was that Cuban people are intolerably loud. Rather than removing the sign and disciplining the employee responsible for posting it, Defendant ignored the posting of the racist sign.

40.  Revelle and Rustman visited the office and never mentioned or said a word to Burns regarding the sign.

41.  Plaintiff mentioned the sign to Don Ross, the Sales Manager at FTS, however, nothing was done, and no investigation or discipline was ever commenced.

42.  Later, the sign was changed to "Caution: hearing protection required for the *loud mouths*," which everyone knew still referred to the Cuban Hispanics in the workplace.

43.  Thus, FTS, Revelle, and Rustman allowed Burns to put up two separate racist and derogatory signs within its shop.

44.  FTS, Revelle, and Rustman condoned this behavior by Burns, further allowing the hostile work environment to prosper.

45.  In November 2018, Plaintiff sent Hispanic employees on the road for service assignments and projects. Thereafter, Burns began targeted harassment of several Hispanic employees without any justifiable basis by taking pictures of their work vehicles and anything inside their vehicles during their work assignment.

46.  Essentially, Burns was insinuating that Hispanic employees could not be trusted with company equipment and vehicles.

47.  Plaintiff complained to Revelle and Rustman about Burns' racially motivated and hostile conduct and harassment in the workplace, explaining that Burns was constantly harassing the Hispanic workers and taking photographs of their vehicles without any legitimate reason each time they departed for an assignment.

48.  However, after allegedly "asking" Burns to cease taking photographs, the conduct continued, and nothing further was done to stop the harassment that was being committed by Burns.

49.  FTS, Revelle, and Rustman were fully advised and aware of all previous complaints of harassment perpetrated by Burns at the Pompano Beach location yet did absolutely nothing within their power to alleviate the circumstances, nor did they reprimand or discipline Burns.

50.  This allowed for the unimpeded growth of a hostile work environment.

51.  In December 2018, Burns sent another email to FTS executives, including Revelle and Rustman, stating that, "the Cubans are going to run [their] business down."

52.  Rather than reprimanding and disciplining Burns, in January 2019, Revelle arrived at FTS's Pompano Beach office and informed Plaintiff that FTS was demoting him from Service Manager to Shop Foreman, and that FTS was hiring a new employee to be the Service Manager.

53.  Unsurprisingly, the new Service Manager happened to be a white American employee by the name of Ron Bean ("Bean").

54.  Meanwhile, Burns continued to harass Plaintiff by submitting more complaints containing fabricated allegations against Plaintiff.

55.  In or about February 2019, Burns sent an email to Rustman regarding the company vehicle that was assigned to Plaintiff for use in work assignments. In the email, Burns alleged that Plaintiff's vehicle was occupying space in the shop and should be cleared to make more room.

56.  Without making any effort to determine the legitimacy of Burns' complaint, Rustman blindly accepted Burns' complaint and informed Plaintiff that he needed to take the vehicle home by the end of the week.

57.  If Burns made any complaint to FTS, it was entertained. Meanwhile, Plaintiff's complaints regarding derogatory and racist conduct were routinely dismissed and ignored.

58. Sometime between March and April 2019, FTS' Pompano shop was holding salary reviews. While conducting Burns' salary review, Revelle asked Burns if he had anything to say to Plaintiff.

59. When Burns replied in the negative, Revelle stated that this was Burn's time to say how he felt about Plaintiff, since Revelle frequently received emails from Burns about Plaintiff, including how "this Cuban fat piece of shit [referring to Plaintiff], is going to take down the company."

60. In June 2019, Plaintiff was approached by Bean who advised Plaintiff that Rustman did not want Plaintiff in the office anymore, and that he was being demoted again.

61. Plaintiff was informed that he would be put back on the floor to work as a mechanic, without reason or explanation from FTS, in what was a pattern of progressive discrimination.

62. On November 1, 2019, Bean did not report to work at the shop in the morning because he had been at a Halloween party the previous evening. Around noon, Bean finally showed up to the shop, still appearing intoxicated, and with red blood shot eyes.

63. However, Bean quickly left the shop and did not return until approximately 3:00 PM.

64. White American employees at FTS, such as Bean, who should be arriving on time and making sure the shop is running smoothly, were never reprimanded nor demoted like Plaintiff, an employee who consistently showed up to work on time and made sure his duties and responsibilities were completed.

65. However, because Plaintiff was a Cuban Hispanic employee, and because he complained about discrimination in the workplace, it was Plaintiff that was demoted without reason or explanation and ultimately terminated.

66.   White employees like Bean, the Service Manager, who held the same position as Plaintiff and reported to the same Officers at FTS, were not subjected to harassment, reprimanded, disciplined, nor terminated as was Plaintiff.

67.   On November 5, 2019, Plaintiff arrived at the shop, departing shortly thereafter to complete his work assignment for the day.

68.   Upon returning to the shop, Plaintiff was called into the office at FTS and informed he was terminated.

69.   The only information provided to Plaintiff involved Rustman instructing an employee to terminate Plaintiff.

70.   Upon Plaintiff's termination, Burns once again posted derogatory written language and pictures in the shop. A derogatory picture of an obese Latino caricature was posted on the fridge with written remarks that read, "You're fired!" Right underneath the derogatory picture with the fat cartoon was a written message that read, "Ralph," Plaintiff's first name.

71.   This hateful, despicable, and racist display was not addressed by FTS or Revelle and Rustman, once again demonstrating that this behavior was accepted and condoned at FTS.

72.   Around January 2020, one of Plaintiff's former co-workers informed Plaintiff that FTS relied upon a baseless complaint made about Plaintiff by Forbes, a white employee who constantly harassed Plaintiff and other Hispanic workers, as a pretext for terminating Plaintiff's employment.

73.   Forbes regularly called the owners and officers of FTS, including Revelle and Rustman, to make complaints with false allegations about Plaintiff and other Hispanic employees, including complaints about how he did not have a work vehicle while other Hispanic mechanics did.

9

74.   In this specific instance, Forbes took a photograph of Plaintiff putting items into his work vehicle. The items were two batteries which Plaintiff paid for and five gallons of oil that a member of upper management had given Plaintiff permission to take home.

75.   Forbes submitted the picture to Rustman; however, Rustman once again failed to take or follow any investigatory steps or procedures regarding the complaint.

76.   Defendants accepted the racially motivated false allegations without question and unlawfully terminated Plaintiff.

77.   At the time of Plaintiff's termination, Defendants were aware that multiple false allegations and complaints had been submitted regarding Plaintiff.

78.   Nevertheless, Defendants did not bother to speak with or question Plaintiff regarding the baseless complaint and used it as a pretext to terminate Plaintiff.

79.   Plaintiff received no explanation as to the reason for his termination from Defendants and was given no opportunity to contest the termination.

## <u>COUNT I: VIOLATION OF 42 U.S.C. §1981 – RACE DISCRIMINATION</u><br>(AGAINST ALL DEFENDANTS)

80. Plaintiff, RALPH CUAN, incorporates and realleges paragraphs 1-79 above as if fully stated herein.

81. 42 U.S.C. § 1981 ("Section 1981") makes it unlawful to discriminate against an employee because of race:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

82. At all times relevant to this action, the relationship between Plaintiff and FTS was a relationship of "employee" to "employer," such that a cause of action exists where discrimination

based on race and national origin is alleged to be the cause of an adverse action directed to the employee by the employer.

83. As a Hispanic-Cuban male born in Cuba and of Cuban descent, Plaintiff is a member of a protected class under Section 1981.

84. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his position.

85. Plaintiff performed his work for Defendants satisfactorily, and he was in all respects a good employee of Defendants.

86. Defendants discriminated against Plaintiff by failing to treat him the same or similar to its non-Hispanic employees as a result of his race.

87. Defendants based their decisions to demote, twice, and subsequently terminate Plaintiff based on his race.

88. The discriminatory actions of Defendants against Plaintiff, when considered individually or collectively, constitutes an adverse employment action because of his race for purposes of Section 1981.

89. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff, his employment, and/or adversely affected his status as an employee.

90. But for Plaintiff's race, he would not have been terminated by Defendants, and Plaintiff's termination constitutes an adverse employment action for which Section 1981 provides legal recourse.

91. Defendants' actions were malicious and demonstrated a reckless indifference to the rights of Plaintiff.

11

92. The aforementioned acts by Defendants were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

93. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, mental anguish, loss of dignity, and other intangible injuries.

94. Pursuant to Section 1981, Plaintiff is entitled to recover his attorney's fees and costs from Defendants, in addition to damages and punitive damages.

WHEREFORE Plaintiff, RALPH CUAN, demands the entry of a judgment in his favor and against Defendants, FTS, DOUG REVELLE, and CHRIS RUSTMAN after a trial by jury, declaring that Defendants violated 42 U.S.C. §1981, awarding Plaintiff compensatory damages including the loss of income in the past and in the future, lost benefits, mental anguish, loss of dignity, other intangible injuries, punitive damages, and attorney's fees and costs as a result of Defendants discriminatory conduct and any and all other relief this court deems just.

## COUNT II: VIOLATION(S) OF TITLE VII
## (DISPARATE TREATMENT – RACE)
### (AGAINST DEFENDANT FTS)

95. Plaintiff, RALPH CUAN, incorporates and realleges paragraphs 1-79 above as if fully stated herein.

96. Defendant was at all times material the "employer" of Plaintiff, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(b).

97. Plaintiff was at all times material an "employee" of Defendant, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(f).

98. Pursuant to § 2000e–2(a)(1), (2) of the Civil Rights Act:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

12

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

99.  Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his position.

100.    Plaintiff performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

101.    Defendant discriminated against Plaintiff by failing to treat him the same or similar to their non-Hispanic employees as a result of his race.

102.    Defendant based its decisions to demote, twice, and subsequently terminate Plaintiff based on his race.

103.    The discriminatory actions of Defendant against Plaintiff, when considered individually or collectively, constitutes an adverse employment action because of his race for purposes of Title VII of the Civil Rights Act.

104.    These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff, his employment, and/or adversely affected his status as an employee.

105. As such, the disparate treatment Plaintiff suffered constitutes an adverse employment action because of his race for purposes of Title VII of the Civil Rights Act.

106. Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Plaintiff.

107. The aforementioned acts by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

108. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, mental anguish, loss of dignity, and other intangible injuries.

109. Pursuant to Title VII of the Civil Rights Act, Plaintiff is entitled to recover his attorney's fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE, Plaintiff, RALPH CUAN, demands the entry of a judgment in his favor and against Defendant, FTS, after a trial by jury, declaring that Defendant violated Title VII of the Civil Rights Act, awarding Plaintiff compensatory damages including the loss of income in the past and in the future, lost benefits, mental anguish, loss of dignity, other intangible injuries, punitive damages, and attorney's fees and costs as a result of Defendant's discriminatory conduct and any and all other relief this court deems just.

## COUNT III: VIOLATION(S) OF TITLE VII
## (DISPARATE TREATMENT – NATIONAL ORIGIN)
### (AGAINST DEFENDANT FTS)

110. Plaintiff, RALPH CUAN, incorporates and realleges paragraphs 1-79 above as if fully stated herein.

111. Defendant was at all times material the "employer" of Plaintiff, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(b).

112. Plaintiff was at all times material an "employee" of Defendant, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(f).

113. Pursuant to § 2000e–2(a)(1), (2) of the Civil Rights Act:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

14

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

114. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his position.

115. Plaintiff performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

116. Defendant discriminated against Plaintiff by failing to treat him the same or similar to their non-Hispanic employees as a result of his national origin.

117. Defendant based its decisions to demote, twice, and subsequently terminate Plaintiff based on his national origin.

118. The discriminatory actions of Defendant against Plaintiff, when considered individually or collectively, constitutes an adverse employment action because of his national origin for purposes of Title VII of the Civil Rights Act.

119. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff, his employment, and/or adversely affected his status as an employee.

120. As such, the disparate treatment Plaintiff suffered constitutes an adverse employment action because of his national origin for purposes of Title VII of the Civil Rights Act.

121. Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Plaintiff.

122.  The aforementioned acts by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

123.  Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, mental anguish, loss of dignity, and other intangible injuries.

124.  Pursuant to Title VII of the Civil Rights Act, Plaintiff is entitled to recover his attorney's fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE, Plaintiff, RALPH CUAN, demands the entry of a judgment in his favor and against Defendant, FTS, after a trial by jury, declaring that Defendant violated Title VII of the Civil Rights Act, awarding Plaintiff compensatory damages including the loss of income in the past and in the future, lost benefits, mental anguish, loss of dignity, other intangible injuries, punitive damages, and attorney's fees and costs as a result of Defendant's discriminatory conduct and any and all other relief this court deems just.

## COUNT IV: VIOLATION OF FLORIDA CIVIL RIGHTS ACT
### (DISPARATE TREATMENT – RACE)
### (AGAINST DEFENDANT FTS)

125. Plaintiff, RALPH CUAN, incorporates and realleges paragraphs 1-79 above as if fully stated herein.

126. The Florida Civil Rights Act of 1992 ("FCRA") makes it unlawful for an employer such as Defendant to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's race.

127. Defendant was, at all times material to this action, a "person" and/or an "employer" that was and remains subject to the FCRA by employing more than fifteen people for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

16

128. The FCRA prohibits Defendant from making employment decisions or from taking personnel actions affecting the terms, conditions, and/or privileges of employment based upon race considerations.

129. The FCRA allows a prevailing employee to obtain an order prohibiting Defendant from engaging in its discriminatory practice(s) and providing affirmative relief from the effects of the practice(s), to recover back pay, compensatory damages, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages. *See* Fla. Stat. §760.11(5).

130. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his position.

131. Plaintiff performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

132. Defendant discriminated against Plaintiff by failing to treat him the same or similar to their non-Hispanic employees as a result of his race.

133. Defendant based its decision to demote, twice, and subsequently terminate Plaintiff based on his race.

134. Defendant engaged in one or more prohibited "discriminatory practice", as the term is defined by Fla. Stat. §760.02(4) and by §760.10(1) by engaging in the aforesaid actions, which is prohibited by Chapter 760, Florida Statutes.

135. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff, his employment, and/or adversely affected his status as an employee.

136. As such, the disparate treatment Plaintiff suffered constitutes an adverse employment action because of his race for purposes of the FCRA.

17

137. Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiff's rights pursuant to FCRA.

138. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

139. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, mental anguish, loss of dignity, and other intangible injuries.

140. Pursuant to the FCRA, Plaintiff is entitled to recover his attorney's fees and costs from Defendant, in addition to compensatory damages and punitive damages.

WHEREFORE, Plaintiff, RALPH CUAN, demands the entry of a judgment in his favor and against Defendant, FTS, after a trial by jury, declaring that Defendant violated the FCRA, awarding Plaintiff compensatory damages including the loss of income in the past and in the future, lost benefits, mental anguish, loss of dignity, other intangible injuries, punitive damages, and attorney's fees and costs as a result of Defendant's discriminatory conduct and any and all other relief this court deems just.

## COUNT V – VIOLATION OF FLORIDA CIVIL RIGHTS ACT
## (DISPARATE TREATMENT – NATIONAL ORIGIN)
### (AGAINST DEFENDANT FTS)

141. Plaintiff, RALPH CUAN, incorporates and realleges paragraphs 1-79 above as if fully stated herein.

142. The Florida Civil Rights Act of 1992 ("FCRA") makes it unlawful for an employer such as Defendant to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's national origin.

18

143. Defendant was, at all times material to this action, a "person" and/or an "employer" that was and remains subject to the FCRA by employing more than fifteen people for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

144. The FCRA prohibits Defendant from making employment decisions or from taking personnel actions affecting the terms, conditions, and/or privileges of employment based upon national origin considerations.

145. The FCRA allows a prevailing employee to obtain an order prohibiting Defendant from engaging in its discriminatory practice(s) and providing affirmative relief from the effects of the practice(s), to recover back pay, compensatory damages, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages. *See* Fla. Stat. §760.11(5).

146. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his position.

147. Plaintiff performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

148. Defendant discriminated against Plaintiff by failing to treat him the same or similar to their non-Hispanic employees as a result of his national origin.

149. Defendant based its decisions to demote, twice, and subsequently terminate Plaintiff based on his national origin.

150. Defendant engaged in one or more prohibited "discriminatory practice", as the term is defined by Fla. Stat. §760.02(4) and by §760.10(1) by engaging in the aforesaid actions, which is prohibited by Chapter 760, Florida Statutes.

151. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff, his employment, and/or adversely affected his status as an employee.

152. As such, the disparate treatment Plaintiff suffered constitutes an adverse employment action because of his national origin for purposes of the FCRA.

153. Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiff's rights pursuant to FCRA.

154. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

155. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, mental anguish, loss of dignity, and other intangible injuries.

156. Pursuant to the FCRA, Plaintiff is entitled to recover his attorney's fees and costs from Defendant, in addition to compensatory damages and punitive damages.

WHEREFORE, Plaintiff, RALPH CUAN, demands the entry of a judgment in his favor and against Defendant, FTS, after a trial by jury, declaring that Defendant violated the FCRA, awarding Plaintiff compensatory damages including the loss of income in the past and in the future, lost benefits, mental anguish, loss of dignity, other intangible injuries, punitive damages, and attorney's fees and costs as a result of Defendant's discriminatory conduct and any and all other relief this court deems just.

## COUNT VI: VIOLATION(S) OF TITLE VII
## (HOSTILE WORK ENVIRONMENT)
## (AGAINST DEFENDANT FTS)

157. Plaintiff, RALPH CUAN, incorporates and realleges paragraphs 1-79 above as if fully stated herein.

158. Defendant violated the Civil Rights Act by subjecting Plaintiff to relentless humiliation, intimidation, and ridicule, because of his race and national origin, creating an abusive and/or hostile work environment.

159. Plaintiff is a Hispanic United States citizen, and therefore is a protected class member.

160. Plaintiff suffered unwelcome harassment because of his race and national origin, that was both subjectively and objectively hostile.

161. The abusive nature of Plaintiff's work environment was pervasive, ongoing, and humiliating.

162. Plaintiff's white counterparts were not subjected to any hostility or racism, because they were non-Hispanic.

163. Plaintiff was relentlessly subjected to derogatory remarks and pervasive accusatory conduct, as detailed *supra*, because he was Cuban.

164. Plaintiff perceived the above-described conduct as hostile.

165. Likewise, any reasonable person would perceive such conduct as hostile.

166. Indeed, the above-described conduct was frequent, severe, and extremely humiliating and was made because of Plaintiff's race and national origin.

167. This environment caused Plaintiff extreme emotional distress.

168. Defendant is liable for the above-described conduct because Plaintiff complained about the racism he experienced multiple times to Defendant's company executives, thus, Defendant had notice of such conduct.

169. Defendant made clear through their action/inaction that they had no interest in rectifying the overt and covert racist acts Plaintiff was subjected to in Defendant's workplace.

170. Consequently, as a result of Defendant's inaction, the abusive and/or hostile work environment intensified.

171. Defendant's failure to investigate and/or correct the racial discrimination in the workplace upon actual notice of such conduct altered the terms and conditions of Plaintiff's employment.

172. Defendant further altered the terms and conditions of Plaintiff's employment, demoting him twice, because of his race and national origin, and holding Plaintiff to a different standard than white employees.

173. Defendant is liable for the environment because they had actual notice of Plaintiff's discrimination complaints, yet took no corrective action whatsoever.

174. Defendant's executives, Revelle and Rustman, repeatedly demonstrated that they did not concern themselves with the fact that FTS's white employees relentlessly discriminated against Plaintiff on a continual basis, and furthermore, facilitated Plaintiff's discrimination and abuse.

175. Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiff's rights.

176. Defendant's violated Title VII, 42 U.S.C. § 2000e-2(a) by subjecting Plaintiff to an abusive hostile work environment because of his race and national origin.

177. As an actual and proximate result of Defendant's unlawful employment practices in violation of the Civil Rights Act, Plaintiff has suffered damages.

178. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, mental anguish, loss of dignity, and other intangible injuries.

179. Pursuant to the Civil Rights Act, Plaintiff is entitled to recover his attorney's fees and costs from Defendant, in addition to compensatory damages and punitive damages.

WHEREFORE Plaintiff, RALPH CUAN, demands the entry of a judgment in his favor and against Defendants, FTS, after a trial by jury, declaring that Defendant violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), awarding Plaintiff compensatory damages including the loss of income in the past and in the future, lost benefits, mental anguish, loss of dignity, other intangible injuries, punitive damages, and attorney's fees and costs as a result of Defendant's discriminatory conduct and any and all other relief this court deems just.

### COUNT VII: VIOLATION(S) OF 42 U.S.C. § 1981
### (HOSTILE WORK ENVIRONMENT)
### (AGAINST ALL DEFENDANTS)

180. Plaintiff, RALPH CUAN, incorporates and realleges paragraphs 1-79 above as if fully stated herein.

181. Defendants violated Section 1981 by subjecting Plaintiff to relentless humiliation, intimidation, and ridicule, because of his race and national origin, creating an abusive and/or hostile work environment.

182. Plaintiff is a Hispanic United States citizen, and therefore is a protected class member.

183. Plaintiff suffered unwelcome harassment because of his race and national origin, that was both subjectively and objectively hostile.

184. The abusive nature of Plaintiff's work environment was pervasive, ongoing, and humiliating.

185. Plaintiff's white counterparts were not subjected to any hostility or racism, because they were non-Hispanic.

186. Plaintiff was relentlessly subjected to derogatory remarks and pervasive accusatory conduct, as detailed *supra*, because he was Cuban.

187. Plaintiff perceived the above-described conduct as hostile.

188. Likewise, any reasonable person would perceive such conduct as hostile.

189. Indeed, the above-described conduct was frequent, severe, and extremely humiliating and was made because of Plaintiff's race and national origin.

190. This environment caused Plaintiff extreme emotional distress.

191. Defendants are liable for the above-described conduct because Plaintiff complained about the racism he experienced multiple times, thus, Defendants had notice of such conduct.

192. However, Defendants made clear through their action/inaction that they had no interest in rectifying the overt and covert racist acts Plaintiff was subjected to incessantly.

193. Consequently, as a result of Defendants' inaction, the abusive and/or hostile work environment intensified.

194. Defendants' failure to investigate and/or correct the racial discrimination in the workplace upon actual notice of such conduct altered the terms and conditions of Plaintiff's employment.

195. Defendants further altered the terms and conditions of Plaintiff's employment, demoting him twice, because of his race and national origin, and holding Plaintiff to a different standard than white employees.

196. Defendants are liable for the environment because they had actual notice of Plaintiff's discrimination complaints, yet took no corrective action whatsoever.

197. Defendants, Revelle and Rustman, repeatedly demonstrated that they did not concern themselves with the fact that FTS' white employees relentlessly discriminated against Plaintiff on a continual basis, and furthermore, facilitated Plaintiff's discrimination and abuse.

198. Defendants' actions were malicious and demonstrated a reckless indifference to Plaintiff's rights.

199. Defendants violated Section 1981 by subjecting Plaintiff to an abusive hostile work environment because of his race and national origin.

200. But for Plaintiff's race and national origin, he would not have been subjected to an abusive hostile work environment.

201. As an actual and proximate result of Defendants' unlawful employment practices in violation of Section 1981, Plaintiff has suffered damages.

202. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, mental anguish, loss of dignity, and other intangible injuries.

203. Pursuant to Section 1981, Plaintiff is entitled to recover his attorney's fees and costs from Defendants, in addition to compensatory damages and punitive damages.

WHEREFORE Plaintiff, RALPH CUAN, demands the entry of a judgment in his favor and against Defendants, FTS, DOUG REVELLE, and CHRIS RUSTMAN after a trial by jury, declaring that Defendants violated Section 1981, awarding Plaintiff compensatory damages including the loss of income in the past and in the future, lost benefits, mental anguish, loss of dignity, other intangible injuries, punitive damages, and attorney's fees and costs as a result of Defendants discriminatory conduct and any and all other relief this court deems just.

## COUNT VIII: VIOLATION OF FLORIDA CIVIL RIGHTS ACT
### (HOSTILE WORK ENVIRONMENT)
### (AGAINST DEFENDANT FTS)

204. Plaintiff, RALPH CUAN, incorporates and realleges paragraphs 1-79 above as if fully stated herein.

205. Defendant violated the FCRA, § 760.10(1)(a), by subjecting Plaintiff to relentless humiliation, intimidation, and ridicule, because of his race and national origin, creating an abusive and/or hostile work environment.

206. Plaintiff is a Hispanic United States citizen, and therefore is a protected class member.

207. Plaintiff suffered unwelcome harassment because of his race and national origin, that was both subjectively and objectively hostile.

208. The abusive nature of Plaintiff's work environment was pervasive, ongoing, and humiliating.

209. Plaintiff's white counterparts were not subjected to any hostility or racism, because they were non-Hispanic.

210. Plaintiff was relentlessly subjected to derogatory remarks and pervasive accusatory conduct, as detailed supra, because he was Cuban.

211. Plaintiff perceived the above-described conduct as hostile.

212. Likewise, any reasonable person would perceive such conduct as hostile.

213. Indeed, the above-described conduct was frequent, severe, and extremely humiliating and was made because of Plaintiff's race and national origin.

214. This environment caused Plaintiff extreme emotional distress.

215. Defendant is liable for the above-described conduct because Plaintiff complained about the racism he experienced multiple times, thus, Defendant had notice of such conduct.

216. However, Defendant made clear through its action/inaction that it had no interest in rectifying the overt and covert racist acts Plaintiff was subjected to incessantly.

217. Consequently, as a result of Defendant's inaction, the abusive and/or hostile work environment intensified.

218. Defendant's failure to investigate and/or correct the racial discrimination in the workplace upon actual notice of such conduct altered the terms and conditions of Plaintiff's employment.

219. Defendant further altered the terms and conditions of Plaintiff's employment, demoting him twice, because of his race and national origin, and holding Plaintiff to a different standard than white employees.

220. Defendant is liable for the environment because it had actual notice of Plaintiff's discrimination complaints, yet took no corrective action whatsoever.

221. Defendant's executives, Revelle and Rustman, repeatedly demonstrated that they did not concern themselves with the fact that FTS's white employees relentlessly discriminated against Plaintiff on a continual basis, and furthermore, facilitated Plaintiff's discrimination and abuse.

222. Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiff's rights.

223. Defendant violated the FCRA, § 760.10(1)(a), by subjecting Plaintiff to an abusive hostile work environment because of his race and national origin.

224. As an actual and proximate result of Defendant's unlawful employment practices in violation of the FCRA, § 760.10(1)(a), Plaintiff has suffered damages.

225. Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, mental anguish, loss of dignity, and other intangible injuries.

226. Pursuant to the FCRA, § 760.10(1)(a), Plaintiff is entitled to recover his attorney's fees and costs from Defendants, in addition to compensatory damages and punitive damages.

WHEREFORE Plaintiff, RALPH CUAN, demands the entry of a judgment in his favor and against Defendant, FTS, after a trial by jury, declaring that Defendant violated the FCRA, § 760.10(1)(a), awarding Plaintiff compensatory damages including the loss of income in the past and in the future, lost benefits, mental anguish, loss of dignity, other intangible injuries, punitive

damages, and attorney's fees and costs as a result of Defendant's discriminatory conduct and any and all other relief this court deems just.

## COUNT IX: VIOLATION(S) OF TITLE VII
### (RETALIATION)
### (AGAINST DEFENDANT FTS)

227. Plaintiff, RALPH CUAN, incorporates and realleges paragraphs 1-79 above as if fully stated herein.

228. Defendant violated Title VII's anti-retaliation provision by taking materially adverse actions against Plaintiff because he engaged in protected activity.

229. Plaintiff engaged in protect activity by complaining about FTS's discriminatory employment practices, which he reasonably believed were motivated by discriminatory animus because of Plaintiff's race and national origin.

230. Plaintiff engaged in protected activity when throughout the course of his employment, on numerous occasions, he complained about the discriminatory pictures and conduct by Burns and Forbes.

231. Rustman and Revelle are officers of FTS, and regularly visit the Pompano Beach location where Plaintiff worked.

232. Rustman and Revelle were aware of situations occurring at the Pompano Beach location and spoke with Plaintiff about Burns' harassment, yet no action was taken to address or fix the issues.

233. From the constant, derogatory complaints by Burns, to the harassing photographing of his vehicle, and to his unfounded demotions at FTS, this series of events highlights that Plaintiff's termination was pretextual all because he was Hispanic/Cuban.

234. Plaintiff suffered materially adverse actions because of his protected activity described above. Defendant took no corrective action after Plaintiff complained.

235. Any reasonable employee well might be dissuaded about opposing discrimination if the employee knew his supervisor would not take any corrective action after the employee repeatedly complained.

236. The above-described materially adverse actions are causally connected to his protected activity because Plaintiff's discrimination complaints to Defendant and the subsequent adverse actions are not wholly unrelated. Indeed, Revelle and Rustman had actual knowledge.

237. Further, Revelle and Rustman took the adverse actions against Plaintiff because of Plaintiff's protected activity.

238. As a result of the Company's employment practices in violation of Title VII's antiretaliation provision, Plaintiff has suffered damages.

239. Defendant's conduct was malicious, willful, and/or with deliberate indifference to Plaintiff's civil rights, to warrant punitive damages against Defendant.

WHEREFORE Plaintiff, RALPH CUAN, demands the entry of a judgment in his favor and against Defendant, FTS, after a trial by jury, declaring that Defendant violated Title VII of the Civil Rights Act, awarding Plaintiff compensatory damages including the loss of income in the past and in the future, lost benefits, mental anguish, loss of dignity, other intangible injuries, punitive damages, and attorney's fees and costs as a result of Defendant's discriminatory conduct and any and all other relief this court deems just.

**COUNT X: VIOLATION(S) OF 42 U.S.C. § 1981**
**(RETALIATION)**
**(AGAINST ALL DEFENDANTS)**

240. Plaintiff, RALPH CUAN, incorporates and realleges paragraphs 1-79 above as if fully stated herein.

241. Defendants violated Section 1981 by taking materially adverse actions against Plaintiff because he engaged in protected activity.

242. Plaintiff engaged in protect activity by complaining about FTS' discriminatory employment practices, which he reasonably believed were motivated by discriminatory animus because of Plaintiff's race and national origin.

243. Plaintiff engaged in protected activity when throughout the course of his employment, on numerous occasions, he complained about the discriminatory pictures and conduct by Burns and Forbes.

244. Rustman and Revelle are officers of FTS, and regularly visited FTS's Pompano Beach offices.

245. Rustman and Revelle were well-aware of situations occurring at the Pompano Beach location and spoke with Plaintiff about issues between him and Burns, yet no action was taken to address or fix the issues.

246. From the constant, derogatory complaints by Burns, to the harassing photographing of his vehicle, and to his unfounded demotions at FTS, this series of events highlights that Plaintiff's termination was pretextual all because he was Hispanic/Cuban.

247. Plaintiff suffered materially adverse actions because of his protected activity described above. Defendants took no corrective action after Plaintiff complained.

248. Any reasonable employee well might be dissuaded about opposing discrimination if the employee knew his supervisor would not take any corrective action after the employee repeatedly complained.

249. The above-described materially adverse actions are causally connected to his protected activity because Plaintiff's discrimination complaints to Defendants and the subsequent adverse actions are not wholly unrelated. Indeed, Revelle and Rustman had actual knowledge.

250. Further, Revelle and Rustman took the adverse actions against Plaintiff because of Plaintiff's protected activity.

251. But for Plaintiff's protected activity, he would not have been terminated by Defendants, and Plaintiff's termination constitutes an adverse employment action for which Section 1981 provides legal recourse.

252. As a result of the Company's employment practices in violation of Section 1981, Plaintiff has suffered damages.

253. Defendants' conduct was malicious, willful, and/or with deliberate indifference to Plaintiff's civil rights, to warrant punitive damages against Defendants.

WHEREFORE Plaintiff, RALPH CUAN, demands the entry of a judgment in his favor and against Defendants, FTS, DOUG REVELLE, and CHRIS RUSTMAN after a trial by jury, declaring that Defendants violated Section 1981, awarding Plaintiff compensatory damages including the loss of income in the past and in the future, lost benefits, mental anguish, loss of dignity, other intangible injuries, punitive damages, and attorney's fees and costs as a result of Defendants discriminatory conduct and any and all other relief this court deems just.

## COUNT XI: VIOLATION OF FLORIDA CIVIL RIGHTS ACT
## (RETALIATION)
## (AGAINST DEFENDANT FTS)

254. Plaintiff, RALPH CUAN, incorporates and realleges paragraphs 1-79 above as if fully stated herein.

255. Defendant violated the FCRA's anti-retaliation provision by taking materially adverse actions against Plaintiff because he engaged in protected activity.

256. Plaintiff engaged in protect activity by complaining about FTS's discriminatory employment practices, which he reasonably believed were motivated by discriminatory animus because of Plaintiff's race and national origin.

257. Plaintiff engaged in protected activity when throughout the course of his employment, on numerous occasions, he complained about the discriminatory pictures and conduct by Burns and Forbes.

258. Rustman and Revelle are officers of FTS, and regularly visited the Pompano Beach location where Plaintiff worked.

259. Rustman and Revelle were well-aware of situations occurring at the Pompano Beach location and spoke with Plaintiff about Burns' harassment, yet no action was taken to address or fix the issues.

260. From the constant, derogatory complaints by Burns, to the harassing photographing of his vehicle, and to his unfounded demotions at FTS, this series of events highlights that Plaintiff's termination was pretextual all because he was Hispanic/Cuban.

261. Plaintiff suffered materially adverse actions because of his protected activity described above. Defendant took no corrective action after Plaintiff complained.

262. Any reasonable employee well might be dissuaded about opposing discrimination if the employee knew his supervisor would not take any corrective action after the employee repeatedly complained.

263. The above-described materially adverse actions are causally connected to his protected activity because Plaintiff's discrimination complaints to Defendant and the subsequent adverse actions are not wholly unrelated. Indeed, Revelle and Rustman had actual knowledge.

264. Further, Revelle and Rustman took the adverse actions against Plaintiff because of Plaintiff's protected activity.

265. As a result of the Company's employment practices in violation of the FCRA's antiretaliation provision, Plaintiff has suffered damages.

266. Defendant's conduct was malicious, willful, and/or with deliberate indifference to Plaintiff's civil rights, to warrant punitive damages against Defendant.

WHEREFORE Plaintiff, RALPH CUAN, demands the entry of a judgment in his favor and against Defendant, FTS, after a trial by jury, declaring that Defendant violated the FCRA, awarding Plaintiff compensatory damages including the loss of income in the past and in the future, lost benefits, mental anguish, loss of dignity, other intangible injuries, punitive damages, and attorney's fees and costs as a result of Defendant's discriminatory conduct and any and all other relief this court deems just.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated this 4th day of November, 2022.

Respectfully submitted,

*s/Robert L. Switkes*
Robert L. Switkes, Esq.
Florida Bar No.: 241059
rswitkes@switkeslaw.com
*s/Bradley F. Zappala*
Bradley F. Zappala, Esq.

Florida Bar No.: 111829
bzappala@switkeslaw.com
*s/Alejandra D. Gonzalez*
Alejandra D. Gonzalez, Esq.
Florida Bar No.:1035938
agonzalez@switkeslaw.com
**SWITKES & ZAPPALA, P.A.**
407 Lincoln Road, PH SE
Miami Beach, Florida 33139
Tel: (305) 534-4757
Fax: (305) 538-5504
*Attorneys for Plaintiff, Ralph Cuan*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this <u>4th</u> day of November, 2022, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.

<u>*s/Robert L. Switkes*</u>
Robert L. Switkes, Esq.

Exhibit "A"

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | |
| | [X] EEOC   510-2020-04472 | |

| Florida Commission On Human Relations | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Ralph Cuan | 305-534-4757 | |

| Street Address | City, State and ZIP Code |
|---|---|
| c/o Switkes & Zappala, P.A. 407 Lincoln Road, PH SE, Miami Beach, FL 33139 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (include Area Code) |
|---|---|---|
| Florida Transportation Systems, Inc. | 15-50 | 954-904-7449 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1290 NW 15th St, Pompano Beach, FL 33069 | |

RECEIVED
DEC 2 2 2020
EEOC-MIAMI DISTRICT OFFICE

DISCRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [X] NATIONAL ORIGIN
[X] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 11/01/2018 | 11/05/2019 |

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a Hispanic Cuban male and I believe that I was discriminated and retaliated against due to my race and national origin by Florida Transportation Systems and its employees. I was hired by Florida Transportation Systems in March 2015 and was promoted to the position of Shop Manager in August 2017. During my tenure as manager, I hired several qualified Cuban males for school bus mechanic positions. Chris Rustman (company executive) and David Burns (company employee), both Caucasian Americans, began questioning why I had hired Hispanic mechanics and indicated that "they barely spoke English." It should be noted that one of these Cuban employees was later terminated. Shortly thereafter, David Burns put up a public sign at our place of employment that indicated "Caution: Hearing protection required for the Cubans." The owners of the company visited the location, saw the sign, and took no steps to take it down and/or reprimand the employees for their discriminatory conduct. The sign was eventually changed to replace the word "Cubans" with "loud mouths", referring to the stereotype that Cubans speak in a loud voice. Photographic evidence of same has been enclosed with this Charge. David Burns continued to harass and discriminate against all of the Cuban employees at Florida Transportation Systems, including myself, by tracking us down and taking pictures of our work vehicles. Mr. Burns unjustifiably and continuously complained that "these Cubans are going to run the business down." I reported this targeted harassment and discriminatory conduct to upper management, but no corrective action was taken. Instead, the targeted harassment and discriminatory conduct worsened. In January 2019, I was advised by Doug Revelle (company executive) that I was being demoted to shop foreman and was being replaced by a newly hired American male. I was discriminatorily demoted considering I was an exemplary employee and would always complete all of my assigned tasks. In February 2019, I was told that my vehicle, which I had previously kept at the shop without issue, was occupying space and needed to be taken home. Other American employees were able to keep their vehicles at the shop and could even keep items at the shop that were used for personal reasons. In April 2019, during my annual performance reviews, Doug (company executive), Mr. Burns, and I met together, and Doug indicated that Mr. Burns emailed him every week and stated that "this Cuban fat piece of shit was going take down the company", referring to me.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 06-19-2020 *Date*   *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)   06/19/2020 |

Notary Public State of Florida
Maryjeanne Marrero
My Commission GG 304406
Expires 02/20/2023

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [x] FEPA | |
| [X] EEOC | 510-2020-04472 |

| Florida Commission On Human Relations | and EEOC |
|---|---|

*State or local Agency, if any*

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet*)

In June 2019, I was approached by Ron Bean, the shop manager, and was told that Chris Rustman did not want me in the office anymore and that I should be demoted once again to technician. On November 5, 2019, Don Ross informed me that the company no longer needed my services and I was terminated. The company failed to provide any reason or explanation for my termination. Shortly thereafter, I learned that they had been tracking me and taking pictures of me and the inside of my work vehicle. Prior to my termination, I had asked upper management if I could take some oil home for personal work and advised that I would pay the company. Upper management approved my request. Nonetheless, they used this and the corresponding pictures as a clear pretext to terminate me. Afterwards, they posted a derogatory cartoon at the shop with my name written over it and the words, "You're fired!". There are other countless examples of harassing and discriminatory statements made by Respondent and its employees, which can be provided at the EEOC's request. At all material times, I was qualified for my position and any reasons given for my wrongful termination and demotions were mere pretexts. I informed upper management of the harassment and discrimination that was occurring in the workplace and upper management failed to take any remedial actions. Instead, I was subjected to adverse action and ultimately wrongfully terminated for reporting inappropriate and illegal discrimination in the workplace.

I believe I have been discriminated, wrongfully terminated, and retaliated against in violation of Title VII of the Civil Rights Act of 1964 and Title XLIV of the Florida Civil Rights Act of 1992.

RECEIVED

JUN 2 2 2020

FDU-MIAMI DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 06-19-2020 _____ Date          _____ Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*)   06/19/2020     Notary Public State of Florida Maryjeanne Marrero My Commission GG 304406 Expires 02/26/2023 |

CAUTION

HEARING PROTECTION
REQUIRED
FOR THE LOUD MOUTHS

RECEIVED

JUN 2 2 2020

FDU-MIAMI DISTRICT OFFICE

CAUTION
HEARING PROTECTION
REQUIRED
FOR THE CUBANS

RECEIVED
JUN 22 2020
FDU-MIAMI DISTRICT OFFICE

# Exhibit "B"



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Miami District Office**
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 08/12/2022

**To:** Mr. Ralph Cuan

Charge No: 510-2020-04472

EEOC Representative and email:   Ines Lozano
Federal Investigator

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 510-2020-04472.

On behalf of the Commission,

Digitally Signed By:Roberto Chavez
08/12/2022
Roberto Chavez
Acting Director

**Cc:**
Chris Rustman
FLORIDA TRANSPORTATION SYSTEMS, INC.
1290 NW 15th St
Pompano Beach, FL 33069

Christopher T Perre
Lewis Brisbois Bisgaard & Smith LLP
110 SE 6th Street Suite 2600
Fort Lauderdale, FL 33301

Jonathan Beckerman
Lewis Brisbois Bisgaard & Smith LLP
110 SE 6th Street Suite 2600
Fort Lauderdale, FL 33301

Robert L Switkes
SWITKES & ZAPPALA, P.A.
407 Lincoln Road Penthouse Southeast
Miami Beach, FL 33139

Please retain this notice for your records.